MURRAY v. SEATTLE CEDAR LUMBER MFG. CO.

(Circuit Court, W. D. Washington, N. D.　August 18, 1910.)

No. 1,743.

PATENTS (§ 328*)—NOVELTY AND INFRINGEMENT—SAW GUARD.
　　The Murray patent, No. 893,087, for a saw guard, claim 3, is void for lack of novelty. Claims 1, 2, and 4 *held* not infringed.

In Equity. Suit by John Murray against the Seattle Cedar Lumber Manufacturing Company. Decree for defendant.

Reynolds, Ballinger & Hutson, for plaintiff.
Peters & Powell, for defendant.

HANFORD, District Judge. This is a suit in equity to protect rights of the complainant as patentee under letters patent No. 893,087, covering an "improvement in saw guards with dimension gage attachments for shingle clippers." The machines called "shingle clippers" are of the same general character as circular trimmer saws used in sawmills and other wood-manufacturing establishments. Their operation without guards to keep persons from contact with the teeth is dangerous, and previous to the use of Murray's device many accidental injuries happened. Now the use of guards is legally compulsory in this state.

To operate the clipper a man, or boy, stands facing the side of the saw and places each shingle on a spring board with its butt end aligned against a straight ledge, with the part to be cut off projecting over the top of the saw, and brings the shingle into contact with the top of the saw by pressing it on the spring board downward. The use of clippers is to make straight edges, cut out knots and flaws in the timber, and divide wide shingles. It is necessary for the operator to frequently extend his hand over the saw to grasp detached parts of the shingles. With a guard attachment over the saw an additional motion, to shove the shingle laterally after placing it on the spring board, is necessary, and because of that additional motion operators have always objected to the use of guards on clippers.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The Murray device consists of a straight iron bar, with supports, to which it is attached at each of its ends, holding it rigidly in a horizontal or slightly inclined position above the saw and lengthwise with its diameter. The straight bar serves the double purpose of a fender and support for one of the elements of Murray's patent, indicated by the descriptive words "dimension gage attachments." The straight bar is adjustably united to its support at one of its ends, so that the space between it and the top of the saw may be widened or diminished. The support at the other end consists merely of an extended part of the bar, bent so that one part is horizontally united to the machine and an intermediate part constitutes an upwardly inclined standard. The bar, at its adjustable end, is bent into an obtuse angle to form a downward projection, to which the support first mentioned is adjustably connected by means of a slot and set screw. In its entirety the guard is hip-shaped, instead of being a true curve; the object being to provide sufficient space between the guard and the saw for feeding in the manner indicated with the least possible enlargement of the structure. The Murray patent also covers another attachment, described as "a guard member formed of a section of flat metal which is formed with a right angular lip." This so-called guard member "performs the function of preventing contact of the operator's hand with the moving saw when grasping the shingles after the sawing operation."

The defendant is charged with infringement of the patent by making and using clipper shingle machines with guards similar to Murray's device without his consent. The evidence proves that the defendant has in its mill and has used clipper shingle machines equipped with guards of two different styles, neither of which is identical with the Murray device, but both are similar. One is composed of three pieces of metal, a straight bar and two end pieces secured to the body of the machine, constituting standards supporting the straight bar in a horizontal or slightly inclined position above the saw; one end being adjustably united to the standard, like the Murray device. The other style is a single bar bent in two places to form obtuse angles, with its ends secured to the machine body; the part between the two angles constituting a fender above the saw lengthwise with its diameter. If desirable to have it so, this guard could be easily made adjustable, so as to widen or diminish the space between the guard and the saw, by the simple method of perforating several screw holes in the ends united to the machine body.

The claims of the patent are four in number. Nos. 1, 2, and 4 cover combinations of elements not found in any machine made or used by the defendant. Therefore no further consideration will be given to them in this decision. Claim No. 3 reads as follows:

"A guard for rotary saws consisting of a member having a horizontal end and an inclined end, a second member having a horizontal end, an inclined intermediate portion, and a downwardly extending end adjustably secured to said inclined end of the first member."

It is a matter of common and general knowledge that blacksmiths and metal workers can, and do habitually, make anything and everything required as guards and fenders, from sword hilts to cages for

tigers, or bank tellers, shaped in curves, angles, and compound formations with separate parts joined to fit any and every object or space to be protected, or guarded against, and it is the opinion of the court that two or more pieces of metal applied to use as a guard to a circular saw do not constitute a patentable invention. The shapes, sizes, and joints of such a guard call for only ordinary mechanical skill to adapt them for use on any kind of a sawing machine. Such a structure is no more patentable than any formation of metal in successive lines, straight, horizontal, vertical, inclined, angular, and curved, to fit any particular object or space, with or without adjustable connecting joints, which ordinary mechanical skill is competent to produce.

The single-piece guard in use in the defendant's mill is simpler and better than the Murray device. It was designed by a blacksmith making no pretensions to inventive genius. Any other blacksmith, who never heard of Murray's patent, could make an equally effective guard.

The court directs that a decree be entered dismissing the case, with costs, for the reason that claim No. 3 of complainant's patent is void for lack of novelty, and the other claims of the patent have not been infringed by the defendant.

---

### THE NORA.`

(District Court, S. D. Florida. January 7, 1910.)

ADMIRALTY (§§ 28, 66*)—JURISDICTION IN PERSONAM—LIBEL IN REM FOR DEATH —AMENDMENT.

A suit in admiralty to recover for the death of a person will not lie in rem against a vessel unless a lien thereon is given by the state laws, and, when such is not the case, the filing of a libel in rem does not give the court jurisdiction, and, where the only process issued and served was an attachment against the vessel and her owners have not appeared except as claimants, the libel cannot be amended to give the court jurisdiction to render a personal judgment against them

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 285, 288, 524; Dec. Dig. §§ 28, 66.*]

In Admiralty. Suit by Eliza Wilson against the steamship Nora. On exceptions to libel and motion to amend. Motion denied, and exceptions sustained.

Kay, Doggett & Smith and H. H. Buckman, for libelant.
J. N. Stripling, for claimant.